IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DENZEL J. McEWEN,

     Petitioner,

     v.                         CASE NO. 2:15-cv-2963

ERNIE MOORE, WARDEN         JUDGE JAMES L. GRAHAM

                           Magistrate Judge Kemp

     Respondent.

<u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner, filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the Petition (Doc. 3) and the Response (Doc. 7). For the reasons that follow, it will be recommended that the Court deny the petition and dismiss this action.

## I. Procedural Background

In an indictment filed on May 24, 2011, the Franklin County, Ohio grand jury charged Petitioner with two counts of murder with a firearm specification, arising out of the death of William Alexander Kohler on December 22, 2010. *Return,* Ex. 1. Petitioner pleaded not guilty. The case was tried to a jury, which returned a verdict of guilty on both counts. In an entry filed on April 16, 2012, the trial court merged the two convictions for purposes of sentencing and sentenced Petitioner to a prison term of 15 years to life, plus a consecutive term of three years on the firearm specification. *Return*, Ex. 5.

Petitioner timely appealed, raising two assignments of error: that the verdict was

against the manifest weight of the evidence and that it was not supported by sufficient evidence. In a decision rendered on February 26, 2013, the Tenth District Court of Appeals overruled both assignments of error. *State v. McEwen*, 2013 WL 749483 (Franklin Co. App. Feb. 26, 2013). Petitioner appealed this decision to the Ohio Supreme Court., raising the same two issues. On June 26, 2013, the Ohio Supreme Court declined to accept Petitioner's timely appeal. *State v. McEwen*, 136 Ohio St.3d 1405 (June 26, 2013). Petitioner made no other state court filings.

In his federal habeas corpus petition, which Petitioner signed on October 19, 2015, Petitioner raises the same two claims which he presented to the state courts. Respondent argues that the petition is time-barred and, alternatively, that it lacks merit. Petitioner has not filed a reply in support of his petition. He did assert in the petition, however, that he did not receive a copy of the Ohio Supreme Court's decision on his appeal despite writing multiple letters to that court in 2013, 2014, and 2015 asking about the status of his appeal. He attached copies of his letters to the petition.

## II. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d) provides:

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion

of direct review or the expiration of the time for seeking such review;

      (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on June 26, 2013, when the Ohio Supreme Court declined to accept his appeal. He had ninety days after that to petition the United States Supreme Court for a writ of *certiorari*. *Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000). That time expired on September 25, 2013. Consequently, he had one year from that date to file his petition. It was over a year late, and Petitioner does not argue otherwise.

The statute of limitations contained in §2244(d) is subject to equitable tolling. As the Court of Appeals explained in *Giles v. Beckstrom*, 826 F.3d 321, 325 (6th Cir. 2016).

   "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal

-3-

quotation marks and citation omitted). In order for the limitations period to be tolled equitably based on attorney error, which is the claim here, the error must be "far more serious" than "a garden variety claim of excusable neglect." *Id*. at 651–52, 130 S.Ct. 2549 (internal quotation marks and citation omitted).

Respondent, relying on, among other decisions, *Winkfield v. Bagley*, 66 Fed. Appx. 578 (6th Cir. May 28, 2003), argues that Petitioner's efforts to obtain information about his appeal do not constitute a diligent pursuit of his rights.  In *Winkfield*, almost ten years elapsed between the petitioner's last effort to learn the status of his state court appeal (which he did by writing letters to his counsel, who told him, erroneously, that the appeal was still pending) and the filing of his habeas corpus petition.  The Court of Appeals held that the petitioner had not shown the required degree of diligence to satisfy the requirements of equitable tolling.  Respondent also argues that Petitioner had other ways to check on the status of his appal apart from writing letters and that he was not entitled to rely simply on the lack of a response as evidence that his appeal had not yet been decided.

As this Court said in *Jones v. Warden, Lebanon Correctional Institution*, 2014 WL 907253. *7 (S.D. Ohio March 7, 2014),

> There is no single standard which defines how a habeas corpus petitioner must attempt to keep up to date about the progress of state court proceedings. Such petitioners find themselves in different circumstances, and those circumstances dictate, to some extent, what they must do in order to be considered diligent. For example, an inmate with internet access to court dockets may be required to use that means to check on the progress of a state court case, while one with no such access will necessarily be relegated to other methods. As one court has stated, "[t]he diligence requirement 'does not demand a showing that the petitioner left

no stone unturned.' " *Munchinski v. Wilson*, 694 F.3d 308, 330 (3d Cir. 2012), quoting *Ramos–Martinez v. United States*, 638 F.3d 315, 324 (1st Cir. 2011). As that court noted, "[i]f a petitioner 'did what he reasonably thought was necessary to preserve his rights ... based on information he received ... then he can hardly be faulted for not acting more "diligently" than he did.' " *Id* . at 331, quoting *Holmes v. Spencer*, 685 F.3d 51, 65 (1st Cir. 2012).

Here, the correct answer to the question of whether Petitioner is entitled to equitable tolling may depend on more facts and circumstances than are currently before the Court.  Requests for equitable tolling must be decided on the facts of each case.  *See King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004) ("every court must consider an equitable tolling claim on a case-by-case basis").   Rather than resolve the statute of limitations issue on the current record, the Court will proceed to an examination of the merits of Petitioner's claims.  *See, e.g., Rains v. Warden, Chillicothe Correctional Institution*, 2016 WL 6136993, *8 (S.D. Ohio Oct. 20, 2016) ("[r]ather than decide the close question or hold an evidentiary hearing to further develop the record, the undersigned concludes that it would be a more expedient and efficient use of the Court's time and resources to directly address petitioner's claims for relief on the merits"), *adopted and affirmed* 2016 WL 6804950 (S.D. Ohio Nov. 16, 2016).

### III.  The Merits

Petitioner asserts two related claims: that the verdict reached by the jury was against the manifest weight of the evidence and that the evidence was insufficient to support his conviction.  Although these claims are similar**,** only the second arises under the United States Constitution; the first is a claim based on state law and cannot be

reviewed by a federal habeas court.  *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.1983).   The Court reviews the federal claim using this standard of review.

## A.  General Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United States Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––– U.S. ––––, ––––, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett,* 559 U.S. 766, 773 (2010) ("AEDPA... imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).   The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e)(1).

Habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as

determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d)(1); *Coley v. Bagley,* 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley,* 457 F.3d 501, 513 (6th Cir. 2006)); *see also* 28 U.S.C. §2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ...case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407....

*Coley, supra*, at 748-49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable,...[t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). *See also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. " '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)). *See also Nicely v. Mills*, 521 Fed.Appx. 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Moreover, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a federal habeas court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Pinholster, supra* at 1398.

### B. Standard of Review for Sufficiency of the Evidence

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the AEDPA, two levels of deference to state decisions are required:

> "In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might

view facts differently than we would." First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir.2008).

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury-not the court-to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ––––, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid*. (quoting *Renico v. Lett*, 559 U.S. ––––, ––––, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ––––, ––––, 132 S.Ct. 2060, 2062 (2012)(per curiam).

## C. Discussion

As the Court does in every case where a sufficiency of the evidence challenge is made, the Court will first recite the facts of the case as they appear in the state court of appeals opinion, and then examine that court's determination that the evidence was sufficient to support the petitioner's conviction.

First, the facts, as stated in *State v. McEwen*, 2013 WL 749483 at *1-2:

> On May 24, 2011, appellant was indicted on two counts of murder, each being an unclassified felony, with a firearm specification attached to both counts. The indictment alleged that appellant killed William Kohler during an altercation on December 22, 2010. Count 1 of the indictment alleged appellant purposely caused Kohler's death, and Count 2 alleged Kohler died as a proximate result of appellant committing a felony offense of violence. Appellant pleaded not guilty to the charges, and a jury trial ensued.
>
> At trial, Brittany Meeks testified as follows. In December 2010, Meeks shared an apartment with her boyfriend, Nicholas Nye. Appellant also lived there "[i]ntermittently." (Tr. Vol.I, 39.) On the evening of December 21, 2010, Meeks was at the apartment with Nye and appellant. Kohler and his girlfriend, Shelby Patzer, were also at the apartment. Appellant left the apartment around 12 midnight, and everyone else fell asleep in the bedroom by 1:00 a.m. Nye and Meeks slept on the bed, and Kohler and Patzer slept nearby on a floor mattress. Later that morning, appellant returned and started fighting with Nye in the bedroom. Meeks testified she saw Kohler try to stop the fight and saw him get shot by appellant. Afterward, appellant fled, and the police arrived. Although Meeks spoke with the police about the shooting at the scene, she testified she had not discussed the incident with anyone prior to that time. Meeks admitted that she and her friends used heroin on the night before the shooting, but testified that heroin generally only impacts her for an hour, and that her ability to recall the shooting was not affected.
>
> Patzer also testified that appellant shot Kohler during the December 22, 2010 altercation. Patzer confirmed that she and Kohler were visiting Nye and Meeks on the night before the incident. She claimed that appellant

was not with them that night, and she indicated that everyone went to bed around 2:30 a.m. She said that nobody was using drugs before going to bed. She admitted to previously using heroin but said that it had no impact on her memory. Lastly, she testified that the police spoke with her, Meeks, and Nye on the morning of the shooting. She said that she had not spoken with Nye or Meeks about the incident prior to the time the police had talked with her.

Nye confirmed at trial that appellant and Meeks lived with him in an apartment, but said that only his name was on the lease. According to Nye, he was at his apartment with appellant, Kohler, Meeks, and Patzer on the evening of December 21, 2010, and everyone was using drugs except for Kohler. Nye admitted he was high on heroin, but claimed the drug did not affect his memory. Nye, Meeks, Kohler, and Patzer went to bed around 3:00 a.m., and appellant left. Appellant returned later that morning and started fighting with Nye. They were in Nye's bedroom, and, at one point, Nye walked away from the fight and sat on his bed. He put his head down and heard gunshots. He looked up and saw Kohler bleeding and appellant running away.

Theresa Rudell lived next to Nye, and testified that she heard shots fired in Nye's apartment at approximately 9:00 a.m. on December 22, 2010. She looked out the peephole of her door and saw appellant fleeing the apartment. She called the police immediately.

Franklin County Coroner Jan Gorniak testified that Kohler was pronounced dead at 9:49 a.m. on December 22, 2010. According to Gorniak, Kohler died from a gunshot wound to the chest.

Columbus Police Officer James Marsh was dispatched to the shooting scene and testified as follows. Marsh went to the scene around 9:15 a.m. and other police officers arrived soon afterward. Marsh saw Kohler lying on the sidewalk, bleeding, and unable to talk. He also saw Nye, Patzer, and Meeks. Marsh apprehended them for questioning and placed them in separate police cruisers. He claimed that those individuals did not have time to discuss the shooting between themselves because they were apprehended and separated shortly after the incident.

Detective Pat Dorn arrived at the shooting scene after Marsh and testified as follows. Nye, Patzer, and Meeks spoke with Dorn about the shooting,

and they independently identified appellant as the shooter. Dorn subsequently searched the apartment where the shooting occurred and took blood samples from the apartment. Dorn explained to the jury that the blood samples were not tested because only Kohler had been injured, and, thus, he believed the blood could only have come from Kohler. Dorn did not collect DNA or fingerprints because, according to Dorn, since appellant lived in the apartment, there would have been traces of those elements expected to be in the apartment. Dorn further testified that he did not test anyone's hands for gunshot residue because the room where the murder occurred was small and residue would have been on all persons present in the room during the incident.

Appellant testified on his own behalf. He claimed that he was not at Nye's apartment on the date of the shooting and denied shooting Kohler.

Petitioner argued in state court that the evidence was insufficient because all of the witnesses were admitted drug users, and because the State never conducted any testing to see if he had fired a weapon and did not produce the weapon at trial. He repeats that argument here, stating that his presence at the apartment complex was not evidence of guilt because he stayed there periodically, and that there was no DNA or fingerprint evidence linking him to the crime scene or to the victim.

The state court of appeals rejected this argument, stating that:

Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id*. In determining whether the evidence is legally sufficient to support a verdict, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009–Ohio–5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by

-12-

the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed, but whether, if believed, does the evidence support the verdict. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002–Ohio–2126, ¶ 79–80 (concluding that the evaluation of witness credibility is not proper on a review for the sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP–668, 2009–Ohio–754, ¶ 4, citing *State v. Woodward*, 10th Dist. No. 03AP–398, 2004–Ohio–4418, ¶ 16 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

The prosecution alleged that appellant committed murder by fatally shooting Kohler, and the jury found appellant guilty of that crime. Appellant argues that the jury's verdict cannot stand because the evidence failed to establish that he shot Kohler. In particular, appellant contends that there is no physical evidence linking him to the murder. However, the prosecution need not rely on physical evidence to prove a crime. *State v. Jordan*, 10th Dist. No. 05AP–1330, 2006–Ohio–5208, ¶ 27. Instead, a crime may be proven solely by testimony from witnesses who were present when the crime occurred. *Id*.

Here, the jury's finding of appellant's guilt was supported by the testimony of four witnesses. Meeks and Patzer testified that they saw appellant shoot Kohler. While this direct evidence alone would have been sufficient to support the jury's guilty findings, there was additional evidence presented from Nye and Rudell. Nye testified that he heard gunshots while sitting on his bed with his head down and when he looked up, Kohler had been shot, and he saw appellant running out of the room. Rudell testified that she saw appellant fleeing from Nye's apartment after hearing gunshots from inside the apartment. Both Nye and Rudell's testimony, if believed, constituted evidence from which the jury could infer appellant was guilty of murdering Kohler.

Accordingly, after a review of the evidence, we conclude that there is sufficient evidence to support the jury's verdict finding appellant guilty of murder.

The state court of appeals did not cite to either the United States Constitution

-13-

or to decisions of the Ohio Supreme Court when it discussed Petitioner's federal constitutional claim. However, it derived its legal test from *State v. Thompkins*, 78 Ohio St. 3d 380 (1997). *Thompkins* correctly states that "a conviction based on legally insufficient evidence constitutes a denial of due process," and cites to federal cases, including *Tibbs v. Florida*, 457 U.S. 31 (1982) and *Jackson v. Virginia*, *supra*, for that proposition. By relying on *Thompkins*, the state court of appeals correctly identified the controlling federal law. Therefore, the only question in this case is whether it reached a result contrary to that law or in a way that unreasonably applied it.

Clearly, it did not. The failure to present physical evidence like gunshot residue or DNA testing is not fatal to the State's case; courts have consistently held that "[c]redible testimony of one identification witness is sufficient to support a conviction." *United States ex rel. Wandick v. Chrans*, 869 F.2d 1084, 1089 (7th Cir. 1989). Here, there were four eyewitnesses who implicated Petitioner in the murder. Federal law permits a state court to consider that type of evidence to be sufficient.

Petitioner also raises the question of whether several of those witnesses were credible because of their admitted heroin use on the night in question. But, under *Jackson*, the jury is the sole decider of the credibility of the witnesses. The only way a court can overturn that decision is if it was "physically impossible for the witness to have observed that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Bailey*, 510 F.3d 726, 733 (7th Cir. 2007) (internal quotation marks omitted). Courts routinely hold

that it is for the jury to decide what effect, if any, the consumption of drugs or alcohol has on a witness' ability to testify truthfully.  *See, e.g., Unites States v. Taylor*, 701 F.3d 1166, 1174 (7th Cir. 2012)(denying a challenge to the sufficiency of the evidence by noting that even if the key witness "had been under the influence of drugs and alcohol ... he could still have observed the events as he testified they occurred" and noting that the evidence of alcohol consumption had been presented to the jury for its consideration); *see also United States v. Harlan*, 815 F.3d 1100, 1106-1107 (8th Cir. 2016)(explaining that an appellate court does not weigh the testimony of the witnesses, and upholding a conviction based on the testimony given by an eyewitness "[d]espite her intoxication").  These cases demonstrate that the state court of appeals' deference to the jury here is in keeping with federal law, and that the state court's decision cannot be characterized as either contrary to, or an unreasonable application of, clearly established federal law.  That being so, Petitioner's sole federal claim - that the evidence was insufficient to support a conviction - lacks merit.

## IV.  Recommended Disposition

For the reasons set out above, the Court recommends that the petition for a writ of habeas corpus be **DENIED** and that this case be **DISMISSED**.

## V.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties

written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge